IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-0704-WYD-KLM

CRISTIAN DIPAULO,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR COUNTY OF ARAPAHOE;
ARAPAHOE COUNTY SHERIFF'S OFFICE;
BRIAN STARBUCK;
ANDREA SANTANA;
ROSEMARIA RODRIGUEZ,

    Defendants.
_____

**ORDER**
_____

I.    INTRODUCTION & BACKGROUND

    This matter is before the Court on Defendants Board of County Commissioners for Arapahoe County, Arapahoe County Sheriff's Office and Brian Starbuck's Motion for Summary Judgment (ECF No. 38), filed on December 30, 2015.   Defendants also filed a Motion to Dismiss (ECF No. 17) on May 7, 2015.   Both motions are fully briefed.

    By way of background, Plaintiff's claims arise out of an incident on August 27, 2013, when the Plaintiff and the mother of his child both attempted to retrieve their child from day care at the Three Bears Learning Center in unincorporated Arapahoe County. The following facts are undisputed:   Defendant Deputy Brian Starbuck ("Starbuck") arrested Plaintiff for domestic violence and harassment based on interviews and statements provided to Starbuck by Defendants Santana (the child's mother) and Rodriguez (the child's maternal grandmother).   Santana told Starbuck that in the parking

lot outside the day care center, Plaintiff had pushed her, reached through her car door in an attempt to take the child, and had called her cell phone repeatedly after she left the day care center.   Rodriguez told Starbuck that Plaintiff had threatened Santana and told the child that Santana would be beaten.

Starbuck approached Plaintiff at his domicile subsequent to his interviews with Santana and Rodriguez.   Plaintiff told Starbuck that he was not supposed to pick up the child until 6:30 PM, that he had gotten into a verbal dispute with Santana, that he used foul language, and that he placed the child in his own car.   Plaintiff denied touching Santana and claimed that she had attempted to push him.   Plaintiff told Starbuck that he had called Santana a few times after she left the day care center.

At some point during Starbuck's interaction with Plaintiff, Plaintiff suggested that Starbuck secure the surveillance video tape from the day care center.   The parties dispute the timing of this request – Plaintiff claims it was prior to his arrest[1], Defendants claim it was after the arrest while Plaintiff was being transported to jail.

The following day, August 28, 2013, Starbuck went to the day care center and talked to an administrator about the existence of a surveillance camera.   The administrator stated she could retrieve the camera footage, but had to first consult with the center's information technology department.   Starbuck left instructions with the administrator on how to get the video to the Sheriff's office.   The administrator contacted the Sheriff's office a few days later, and on August 31, 2013, a deputy other than Starbuck

---

1 However, Plaintiff indicates in his Complaint that he mentioned the video tape after being arrested. "While being transported to the Arapahoe County Jail, Plaintiff asked Deputy Starbuck to look for surveillance cameras around the exterior of Three Bears Learning Center."  Compl., ¶ 15.

retrieved it. The video was placed into evidence with the Sheriff's Evidence Section on September 3, 2013.

On August 28, 2013, Plaintiff was arraigned and the court found probable cause for his arrest. Plaintiff was prosecuted on a domestic violence/harassment charge in Arapahoe County Court. Plaintiff was released on bond on August 29, 2013. On January 17, 2014, the District Attorney forwarded a records request to the Arapahoe County Sheriff's Office ("ACSO") Records Section for the booking photo and all photos associated with Plaintiff's prosecution. The request did not seek the surveillance video. On January 25, 2014, the Records Section responded to the District Attorney's request, noting that the booking photo had been emailed and that no other photos existed. On June 12, 2014, Plaintiff's public defender requested a copy of the surveillance video. On June 16, 2014, a hearing was conducted in Plaintiff's criminal case during which Plaintiff's counsel examined Starbuck about the surveillance video. On June 17, 2014, ACSO provided a copy of the surveillance video to Plaintiff's counsel. On July 16, 2014, the charges and prosecution against Plaintiff were dismissed because the District Attorney was unable to obtain the presence of Defendant Santana for trial.

On April 4, 2015, Plaintiff filed the instant case, asserting a claim under 42 U.S.C. § 1983. Plaintiff claims that Defendants failed to adequately document the surveillance video's existence and storage, and "encouraged a custom of filling the forms inadequately without regard for the need to properly use adequate forms to prevent the loss of exculpatory evidence." Compl., ¶ 34. As a result, Plaintiff claims that

Defendants failed to timely retrieve and/or produce the video during the course of his prosecution.  *Id.*  Plaintiff also claims that the Board of County Commissioners and ACSO failed to sufficiently train and supervise their employees on the proper procedures for storing, retrieving, documenting, and producing exculpatory evidence, and that they encouraged a custom of inadequately filling out tracking forms regarding such evidence. *Id.* at ¶¶ 32-35.  Plaintiff also claims that the Defendants failed to view the video before causing criminal proceedings against Plaintiff, or in the alternative, viewed the video and caused the proceedings to go forward despite knowing the video exonerated him.  *Id.* at ¶ 34.

Defendants argue that there is an absence of facts and law to support a § 1983 claim against Defendants, and that Defendant Starbuck is entitled to qualified immunity.

II.     STANDARD OF REVIEW

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c).   A material fact is one that might affect the outcome of the dispute under the applicable law.   *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995).   I must construe all inferences in favor of the party against whom the motion under consideration is made.   *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010 (10th Cir. 2000).   All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III.   ANALYSIS

A § 1983 claim requires a court to "isolate the precise constitutional violation" that is being alleged against a defendant.   *Baker v. McCollan*, 443 U.S. 137, 140 (1979).   As noted by Defendants, Plaintiff failed to specify in his Complaint on which constitutional provision his single § 1983 claim was based.   I note that Plaintiff also failed to specify the basis for his claim in the Scheduling Order issued by Magistrate Judge Mix on August 5, 2015.   In their motion to dismiss and in their motion for summary judgment, Defendants suggest that a claim based on a purported failure to produce or timely produce exculpatory evidence would fall under the Due Process Clause of the Fourteenth Amendment as a *Brady* violation, implicating *Brady v. Maryland*, 373 U.S. 83 (1963). However, both parties acknowledge that a *Brady* violation did not occur in the instant case because the criminal prosecution was dismissed prior to trial.   *See* Def.'s Motion, ECF No. 38, p. 7; Pl.'s Response, ECF No. 43, p. 6.

In his response to Defendants' motion to dismiss, which he filed on June 22, 2015, Plaintiff clarified that his § 1983 claim was for malicious prosecution as a violation of his

- 5 -

Fourth Amendment rights.   Pl.'s Response, ECF No. 20, p. 2, 3.   Accordingly, Defendants only addressed Plaintiff's claim of a Fourth Amendment violation of his right against malicious prosecution in their reply in support of their motion to dismiss, as well as in their motion for summary judgment.   However, in his response to Defendants' motion for summary judgment, which he filed on January 21, 2016, Plaintiff asserted that his claim was based not only on a claim of malicious prosecution under the Fourth Amendment, but also a violation of his rights against unreasonable search and seizure under the Fourth Amendment.   Pl.'s Response, ECF No. 43, p. 5.   This theory of liability had not been asserted prior to January 21, 2016 in any of Plaintiff's filings.   Although a claim for unreasonable search and seizure would be appropriate under a § 1983 claim, his sudden assertion of this new theory of recovery after the close of discovery is "untimely, unexplained, and abusive."   *Freeman v. White*, 2006 WL 2793139 (D. Colo. Sept. 28, 2006); *see also Pater v. City of Casper*, 646 F.3d 1290 (10th Cir. 2011) (district court properly refused to consider claim raised for the first time in summary judgment response).

Although a court may treat new claims raised in a plaintiff's opposition to summary judgment as a motion to amend the complaint under Fed. R. Civ. P. 15, such an amendment will be denied if it will prejudice the other party in maintaining its defense on the merits.   *See Freeman*, 2006 WL 2793139, at *17.   Defendants have not had the opportunity to properly address this new theory of recovery.   Also, plaintiffs cannot "wait until the last minute to ascertain and refine the theories on which they intend to build their

case," and Plaintiff in this case has offered no reason as to why I should allow an amendment by implication at this stage in the case.   Accordingly, I will only address Plaintiff's § 1983 Fourth Amendment claim for malicious prosecution.[2]

### A.  Malicious Prosecution

In the Tenth Circuit, a § 1983 malicious prosecution claim requires a plaintiff to demonstrate 1) that the defendant caused the plaintiff's continued confinement or prosecution; 2) that the original action terminated in favor of the plaintiff; 3) that no probable cause supported the original arrest, continued confinement, or prosecution; 4) that the defendant acted with malice; and 5) that the plaintiff sustained damages.   *See Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).   Defendants argue that Plaintiff fails to establish the second, third, and fourth elements.

As to the second element, it is well-established in Colorado that a claim for malicious prosecution "does not accrue until the underlying criminal case is terminated in

---

2 Plaintiff alleges in his response to Defendants' motion for summary judgment that Defendants "violated his Due Process rights under the Fourth Amendment."   Pl.'s Response, ECF No. 43, p. 5.   Insofar as Plaintiff intended to assert an additional claim for malicious prosecution grounded in the *Fourteenth* Amendment, that basis is unavailable because an adequate Colorado state law remedy exists.   "If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Moore v. Miller*, 2014 WL 2207346, at *4 (D. Colo. May 28, 2014); *Myers v. Koopman,* 738 F.3d 1190, 1194 (10th Cir. 2013) (citing *Becker v. Kroll,* 494 F.3d 904, 921 (10th Cir. 2007) (citing *Parratt v. Taylor,* 451 U.S. 527, 535–44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 327 (1986)). Justice Kennedy argued that in § 1983 malicious prosecution cases, a "state actor's random and unauthorized deprivation of [Fourteenth Amendment due process interests] cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate post deprivation remedy."   *Albright v. Oliver*, 510 U.S. 266, 284 (1994) (Kennedy, J., concurring).   As he explained, "[i]n the ordinary case where an injury has been caused . . . by a random and unauthorized act that can be remedied by state law, there is no basis for intervention under § 1983, at least in a suit based on 'the Due Process Clause of the Fourteenth Amendment.'"   *Id.* at 285 (citing *Parratt,* 451 U.S. at 536); *see also Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir. 2001) (rejecting procedural due process claim under § 1983 for malicious prosecution because state provides adequate tort remedy); *Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir. 2001) (holding state tort remedy "knocks out any constitutional tort of malicious prosecution" based on due process).

the plaintiff's favor."  *Jones v. Lehmkuhl*, 2013 WL 6728951, at *25 (D. Colo. Dec. 20, 2013) (citing *Allen v. City of Aurora*, 892 P.2d 333, 335 (Colo. App. 1995).   Whether the underlying claim was resolved in favor of the plaintiff is a question of law.  *Hewitt v. Rice*, 154 P.3d 408 (Colo. 2007).   To determine whether a dismissal constitutes a favorable termination, courts look "to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence."  *Wilkins*, 528 F.3d at 803.   The Colorado Supreme Court has indicated that a malicious prosecution action "requires a favorable termination on the merits of the claim" in order to satisfy the second element.  *Id.* at 416.   The dismissal in this case was not on the merits, but instead the Arapahoe County Court action ended in a dismissal without prejudice, due to the fact that the prosecution could not secure the appearance of the victim, Defendant Santana, at trial.   See Def.'s Motion to Dismiss, ECF No. 17, Ex. 4.   In Colorado, "dismissal without prejudice means a dismissal not on the merits of the case."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004); *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (noting that F.R.C.P. 41 "makes clear that an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice.'").   Plaintiff cannot satisfy the elements of a malicious prosecution claim because he has failed to establish that the original action terminated in his favor.

### B.  Failure to Train and/or Supervise

Plaintiff's Complaint contains a single claim of relief against Defendants ACSO

and the Board under 42 U.S.C. § 1983.  Compl., ¶¶ 29-39.  In that claim, Plaintiff argues that the Board and ACSO "established customs, policies, practices, and official acts for documenting the existence and storage of exculpatory evidence."  *Id.* at ¶ 30.  The Board and ACSO also "established customs, policies, practices, and official acts for retrieving and producing exculpatory evidence requested during criminal proceedings."  *Id.* at ¶ 31.  Plaintiff alleges that the Board and ACSO "failed to sufficiently train and supervise their employees on the proper procedures for documenting the existence and storage of exculpatory evidence," *id.* at ¶ 32, and that the Board and ACSO "failed to sufficiently train and supervise their employees on the proper procedures for retrieving and producing exculpatory evidence requested during criminal proceedings."  *Id.* at ¶ 33.  Plaintiff alleges that the Board, ACSO, and Starbuck "acted knowingly and with deliberate indifference to Plaintiff's rights."  *Id.* at ¶ 37.  Plaintiff's specific fact allegations are limited to the following:   1) the Board and ACSO used inadequate evidence tracking forms; 2) the Board and ACSO have encouraged a custom of filling the forms inadequately; 3) the Board, ACSO, and Starbuck failed to view the surveillance video, or viewed it and caused criminal proceedings against Plaintiff "despite knowing the video exonerated Plaintiff"; and 4) the Board, ACSO, and Starbuck "lacked sufficient documentation of the existence and storage of the video and failed to timely retrieve and produce the video" after Plaintiff's counsel requested a copy.  *Id.* at ¶ 34.

   *1.  Defendant ACSO*

   As a preliminary matter, Defendants argue that ACSO "is not a 'person' or

separate suable entity under 42 U.S.C. § 1983 and should be dismissed from this action." Def.'s Motion to Dismiss, ECF No. 17, p. 1, n.1.   In his response to the motion to dismiss, Plaintiff agreed, stating "[i]n so far as Arapahoe County Sheriff's Office proves not to be capable of being sued, it cannot be dismissed any more than it could be joined in the first instance.   Plaintiff does not object to amending the caption to delete the reference to the Arapahoe County Sheriff's Office."   Pl.'s Response, ECF No. 20, p. 1, n.1.   I agree with the parties that ACSO is not a separate entity from Arapahoe County, and is therefore not a person under § 1983.   *See Schreiner v. City of Louisville, 2015 WL 9437882, at \*10, n.3 (D. Colo. Dec. 4, 2015); Hammond v. Beicker*, 2014 WL 4636462, at \*3 (D. Colo. Sept. 17, 2014); *Stump v. Gates*, 777 F. Supp. 808, 814-16 (D. Colo. 1991).   Accordingly, Defendant Arapahoe County Sheriff's Office will be dismissed as an improper party to this action.

### 2. Defendant Board

As to Plaintiff's claim that the Board failed to sufficiently train and supervise its employees, Defendants argue that Plaintiff's conclusory assertions "are insufficient to set forth a viable claim" because the pleading "fails to demonstrate a constitutional violation as the result of any alleged failure to produce" the surveillance video.   Def.'s Motion to Dismiss, ECF No. 17, p. 9.   Defendants state that "Plaintiff was asked during the course of discovery in this case to identify the facts supporting his failure to train and/or supervise claim.   In response, he simply repeated complaints and allegations pertaining solely to the circumstances under which he was arrested" and surrounding the handling of the

surveillance video.   Def.'s Motion for Sum. Jud., ECF No. 38, p. 14.

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.   *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).   Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."   *Id.*   "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.   A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."   *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ").   "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"   *Connick*, 563 U.S. at 61, citing *Canton v. Harris,* 489 U.S. 378, 388 (1989).   "Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983."   *Id.* (internal quotations removed); *see also Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 1996) (noting that a plaintiff may establish the existence of a municipal policy or custom by demonstrating the failure to adequately train or supervise employees,

so long as that failure results from deliberate indifference to the injuries that may be caused.)

Plaintiff alleges that the Board used inadequate evidence tracking forms and that it encouraged a custom of filling the forms inadequately. Compl., ¶ 34. Plaintiff argues that when the prosecutor's office requested the booking photo and all other photos associated with the case in January of 2014, the fact that the video was not produced as part of that request demonstrates a failure to train and/or supervise. Plaintiff states that the Board "has been unable to provide a single document or any form of evidence suggesting that it trained its officers that they must obtain and review exculpatory videotape prior to conducting an arrest." Pl.'s Response, ECF No. 43, p. 10. Plaintiff states that "[a]ll evidence currently available suggests that [the Board] not only failed to train officers that they must view exculpatory videotape before conducting an arrest but also had and maintained an inadequate system for tracking, labeling, storing, and submitting of evidence to the prosecutor's office." *Id.* However, Plaintiff points to no specific evidence of any inadequacy of the tracking forms themselves, or indicated any specificity pertaining to training methods that would result in inadequate forms or an inadequate method of filling out those forms. Plaintiff's argument also suffers because it lacks meaningful evidence as to what the custom or policy of the Board was in these circumstances, or how specifically there was a failure to train its employees. Pointing to a single incident without anything further is insufficient. *See Rigg v. City of Lakewood*, 37 F. Supp. 3d 1207, 1212 (D. Colo. 2014).

Case 1:15-cv-00704-WYD-KLM Document 45 Filed 03/02/16 USDC Colorado Page 13 of 17

Instead, Plaintiff cites to *Harris v. Commerce City*, No. 09-cv-01728-MSK-KT, D. Colo. 2010 for the proposition that "[a]lthough a police officer need not conduct a comprehensive investigation before effecting an arrest, the officer may not choose to ignore obviously exculpatory information that is tendered to him, refuse to obtain easily discoverable facts bearing on the alleged crime, or conduct an investigation in a biased manner." Pl.'s Response, ECF No. 43, Ex. 1, p. 7. *Harris* addresses the arrest of a plaintiff who was accused of domestic violence and harassment, and the arresting officer made the decision to arrest the plaintiff on the basis of statements from the victim, and despite the plaintiff's contentions that the victim's phone records would exonerate him. *Id.* After the above statement was made by the *Harris* court, the court went on to say that there was no exculpatory information actually tendered to the officer at the scene, and that the plaintiff "merely denied [the victim's] allegations and contended that her allegations could not be proven." *Id.* Further, the plaintiff in *Harris* did not contend that such exculpatory evidence was "readily accessible to [the officer] at the time he was making the decision as to whether to arrest" the plaintiff. *Id.* at 7-8.

The *Harris* court also cited favorably to a Second Circuit case (*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997)) involving an assault where the officer arrested the plaintiff after the victim approached the officer, described the altercation, and named the plaintiff as the attacker. Despite the plaintiff's insistence that the victim instigated the altercation, the officer arrested the plaintiff anyway. That plaintiff claimed that the officer "should have made further inquiries and interviewed witnesses at the

scene" before making an arrest. However, as the *Harris* court noted, the trial court and the Second Circuit disagreed, explaining that "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* at 7.

Plaintiff also relies on *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252 (10th Cir. 1988) for the proposition that readily available video tape evidence must be viewed prior to conducting an arrest, and that officers "may not close their eyes to facts and ignore readily available exculpatory evidence." In *Baptiste*, a woman was detained and interrogated by store security, and later by city police officers, for shoplifting, but was later released when the officers viewed the security video tape which exonerated her. The court in *Baptiste* noted that the reasonableness of the arrest was questionable in light of the *available* video tape. It noted that "[o]fficers may not rely solely on a security guard's allegations when the officers have before them an exact replication of all the information on which the guard's allegations are based." *Id.* at 1257. Clearly, that was not the case here. The undisputed facts in this case show that the surveillance video from the day care center was not before Starbuck, nor was it tendered to him or readily available to him at the time of arrest. In fact, the video was not released by the day care center until a few days later, and at that time, it was released to an officer other than Starbuck, and was placed into evidence with ACSO. The cases cited by Plaintiff are distinguishable in this case, and he has failed to state a claim for failure to train and/or supervise against the Board.

### C. Qualified Immunity

Once a defendant pleads qualified immunity, the plaintiff bears a two-part burden: 1) the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right; and 2) the plaintiff must show that the right was clearly established at the time of the conduct at issue. *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). To satisfy the second part of this burden, a plaintiff must show that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1535. Although the specific action at issue does not have to have previously been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent. Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.*

In order to meet his burden under the first prong to defeat the qualified immunity claim, Plaintiff must assert facts meeting the elements of a § 1983 malicious prosecution claim. *See Chavez-Torres v. City of Greeley*, 2015 WL 1850648, at *6 (D. Colo. April 21, 2015), citing *Wilkins*, 528 F.3d at 797 (noting that a § 1983 claim premised on a violation of the Fourth Amendment required the analysis of the elements of that claim). As noted above, Plaintiff failed to establish the second element of a malicious prosecution claim. Plaintiff appears to argue that Starbuck is not entitled to qualified immunity because the arrest itself was wrongful due to an alleged lack of probable cause. This is an argument

in support of Plaintiff's newly asserted claim of a Fourth Amendment violation of his right against unreasonable search and seizure.   See *Wilkins*, 528 F.3d at 798; *Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008); *Gerstein v. Pugh*, 420 U.S. 103 (1975).   As noted above, the unreasonable search and seizure claim was untimely asserted by Plaintiff and is not being considered here.   However, I note that the Arapahoe County Court found that there *was* probable cause for Plaintiff's arrest on August 28, 2013, and in Plaintiff's response to Defendant's motion to dismiss, he conceded the following:   "To the extent that the Arapahoe Defendants [the Board, ACSO, and Starbuck] relied on statements the other defendants [Santana and Rodriguez] made, Plaintiff does **not** contend that the arrest lacked probable cause."   Pl.'s Response, ECF No. 20, p. 3, n.3 (emphasis in original).   Any further argument that Plaintiff asserts that the arrest was wrongful because Starbuck did not view the surveillance video prior to the arrest is already addressed herein, and I find no merit to that argument.   Because Plaintiff has failed to establish the second element of a malicious prosecution claim, he cannot meet the burden of the first prong to defeat qualified immunity in this case.

IV.   CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants Board of County Commissioners for Arapahoe County, Arapahoe County Sheriff's Office and Brian Starbuck's Motion for Summary Judgment (ECF No. 38) is **GRANTED**.   It is

FURTHER ORDERED that Plaintiff's Motion for a One-Day Extension of Time to

Respond to Defendants' Motion for Summary Judgment (ECF No. 42) is **GRANTED**. Plaintiff filed his response subsequent to filing the motion, thus, the motion is granted retroactively.   It is

FURTHER ORDERED that Defendant Arapahoe County Sheriff's Office is dismissed as an improper party in this matter.   The Clerk of the Court is directed to amend the caption to remove this Defendant.   It is

FURTHER ORDERED that Defendants Board of County Commissioners for Arapahoe County, Arapahoe County Sheriff's Office and Brian Starbuck's Motion to Dismiss (ECF No. 17) is **DENIED as moot**.

Dated:   March 2, 2016.

BY THE COURT:

s/ Wiley Y. Daniel  
WILEY Y. DANIEL,  
SENIOR UNITED STATES DISTRICT JUDGE